STATE OF MAINE                                          SUPERIOR COURT
                                                        CIVIL ACTION
YORK, ss.                                               DOCKET NO. CV-02-036


DONALD A. THOMPSON, SR. and
FREDERICK L. LOCKWOOD, III,

         Plaintiffs

                                                        ORDER
    v.                                                  AND
                                                        DECISION

SHAW'S SUPERMARKETS, INC. and                  DONALD L. GARBRECHT
CLIFFORD W. PERHAM, INC.,                               LAW LIBRARY

         Defendants                            SEP 10 2002


The plaintiffs are truck drivers who were employed by Shaw's Supermarkets, Inc. or a subsidiary and were paid by the mile. They are seeking overtime pay for weeks where they worked more than 40 hours. A motion for certification of class action has been filed but the defendants' response to that motion is not due until September 16, 2002.

The defendants have answered and raised a substantial number of defenses and have filed a motion for summary judgment based on one of the defenses that the defendants are "exempt from paying plaintiffs overtime pay under 26 M.R.S.A. §664."

The related issues of minimum wages, length of the work day, and overtime pay have been debated in the United States for at least a century. The eight hour day was part of the platform of the Order of the Knights of Labor back in 1886 and was an issue raised by the Populists at the end of the nineteenth century. Minimum wage

legislation was part of President Truman's Fair Deal. There has been an historic tension between the desire of labor for, in the words of Samuel Gompers, "more and more", and the desire of management to pay less and less. Our own legislature has been part of these debates and the attempts to balance conflicting interests.

The Legislature in 1959 stated, "It is the declared public policy of the State of Maine that workers employed in any occupation should receive wages sufficient to provide adequate maintenance and to protect their health, and to be fairly commensurate with the value of the services rendered." 26 M.R.S.A. §661.

The specific law that governs the current motion is found at 26 M.R.S.A. §664. That section begins with the statement that "Except as otherwise provided in this subchapter, an employer may not employ any employee at a rate less than the rates required by this section." Subsection 1 governs minimum wages while subsection 2 relates to tip credits. Subsection 3 sets forth the provisions governing overtime pay. It starts with "An employer may not require an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week." The subsection goes on to state that "The overtime provision of this section does not apply to: . . . F. The canning, processing, preserving, freezing, drying, marketing, storing, packing for shipment or distribution of: (1) Agricultural produce; (2) Meat and fish products; and (3) Perishable foods."

The list of exempt occupations is precise and shows those industries and businesses which have either been able to convince the legislature of their need for

an exemption from the general laws favoring overtime pay or which have fallen from favor and lost their exemption.

Subsection 3, which was amended in 1997 to add that "Individuals employed, directly or indirectly, for or at an egg processing facility that has over 300,000 laying birds must be paid overtime in accordance with this subsection", is an example of a portion of an industry that lost its exemption. Subsection 3(A), governing automobile mechanics, parts clerks and salesmen shows the precision of the Legislature when it stated that the interpretation of these terms must be consistent with the interpretation of those terms under the federal overtime law.

The two named drivers in this case apparently sometimes distribute agricultural produce, meat and fish products or perishable foods. They apparently also took loads of other types of grocery items. The question presented in this motion would be easily answered if the drivers only distributed the named items. They would under the explicit provisions of the Maine law be exempted.

The plaintiffs have argued that the absence of a comma after "shipment" means that the exemption does not cover distribution, only the packing for distribution. That argument is unpersuasive as the distribution of the named items is as essential as its canning, processing, preserving, freezing or drying and as it is not at all clear how packing for shipment would be different from packing for distribution. While it is not necessary to go to the legislative history, the materials cited by the defendants from earlier Legislatures is also supportive of the conclusion that distribution, not just packing for distribution, is part of the exemption.

3

What happens if in a given week a driver works more than 40 hours but the week is divided between loads of agricultural produce, meat and fish products or perishable foods and loads of other grocery items? This question has not been answered by the Law Court though some generalized guidance in how to answer the question has been provided.

The plaintiffs have argued that this is a classic example of a "commingled workweek", that federal precedents indicate that if any of the week is spent in non-exempt work the whole week is non-exempt and that the State does and should follow federal precedents. While it is true that the current case may involve commingled workweeks, and it is true that the State looks to relevant federal precedents for guidance, it is not the case that the principle that any non-exempt work defeats the exemption would apply to truck drivers. A State law is being interpreted, the work does not directly involve agriculture, and the reasoning behind the federal precedents is not persuasive. While the rule suggested by the plaintiffs is easy to apply, its origin appears to be *Fleming v. Swift & Co.*, 41 F.Supp. 825, 832 (N.D. Ill. 1941) involving the federal Fair Labor Standards Act of 1938. There the entire analysis offered in the opinion, which has been cited with some frequency, is "An employer may not claim an exemption for any employee under Section 7(c) if the employee during any part of the workweek for which the exemption is claimed does any work which does not fall within the scope of the exemption."

In the case of *In re Wage Payment Litigation*, 759 A.2d 217, 220-1 2000 ME 162, ¶4 the Law Court stated,

> "When construing a statute, we seek to give effect to the legislative intent by examining the plain meaning of the statutory language." ... "If the plain meaning of the text does not resolve an interpretive issue raised, we then consider the statute's history, underlying policy, and other extrinsic factors to ascertain legislative intent. ... In ascertaining legislative intent, we interpret the section of the statute in the context of the statutory scheme in which it is found."

Likewise in *Director of the Bureau of Labor Standards v. Cormier*, 527 A.2d 1297 (Me. 1987) the Law Court stated, at 1300, that "Remedial statutes should be liberally construed to further the beneficent purposes for which they are enacted."

The Legislature intended that overtime provisions apply unless specifically exempted. The Legislature has also determined that some employees and some types of work would be exempt. Those exemptions are to be construed consistent with the twin requirements that overtime is the normal policy but specific, limited, precise exceptions apply.

In order to give effect to those related but competing principles any hours spent by a truck driver in distributing agricultural produce, meat and fish products or perishable foods must be exempt from overtime. That means that in order to obtain any overtime pay, which might otherwise be authorized by law, the truck driver must work more than 40 hours distributing non-exempt products.

I am fully aware of the federal regulations that have 20% or 50% cutoffs which have the result that only a minority of the week can be spent on non-exempt

work without the employer losing the exemption. There are numerous possible configurations of a work week. A truck driver could spend 8 hours driving perishable foods and 38 hours with paper products or could spend 38 hours with perishable foods and 8 hours with paper products or 23 hours with each. In the absence of legislation or, at least, a properly enacted regulation it would be arbitrary for a court to determine that one driver might get overtime while another would not. The Legislature decided to grant an exemption from overtime for certain work. My decision is designed to effectuate that decision. If the issues surrounding a "commingled workweek" need clarification, amendment, or refining, those decisions are best made by the Maine Legislature.

The current Maine legislation at 26 M.R.S.A. §664 can best be interpreted to provide that hours worked in the distribution of agricultural produce, meat and fish products or perishable foods do not count toward the 40 hour limit after which overtime rates must be paid.

The statute is clear that an exemption exists for the distribution of the three categories of foods. If the exemption was limited to a truck driver who exclusively distributed the exempt foods then the exemption would be meaningless and the clear terms of the legislation would be frustrated.

Summary judgment will not be granted to either the plaintiffs or the defendants as it is not yet clear whether the plaintiffs would qualify for overtime benefits.

The entry is:

Defendants' motion of May 2002 for summary judgment is denied.

Dated:        September 5 , 2002

Paul A. Fritzsche
Justice, Superior Court

Donald F. Fontaine, Esq. - PLS
Philip Moss, Esq. - DEFS

STATE OF MAINE
York, ss

DONALD A. THOMPSON, et al,

    Plaintiffs

v.

**ORDER**

DONALD L. GAMBRECHT
LAW LIBRARY

AUG 7 2003

SHAW'S SUPERMARKETS, INC, et al,

    Defendants

This legally complex case involves claims for overtime pay brought by truck drivers for Shaw's Supermarkets, Inc. and its subsidiary Clifford W. Perham, Inc. The current motion is the defendants' motion for summary judgment. Both parties have submitted excellent briefs and ably argued their positions.

The issues presented in the pending motion are three. What does the exemption from overtime provisions for the "... distribution of: (1) Agricultural produce; (2) Meat and fish products; and (3) Perishable foods..." found at 26 M.R.S.A. §664(3)(F) mean in the context of this dispute? Did the Maine legislature acquiesce in the Maine Department of Labor's long held view that the Maine overtime provisions did not apply to interstate truck drivers? Does Maine's overtime law apply to work performed outside its borders?

I attempted to answer much of the first question in a decision and order in this case of September 5, 2002. Justice Brennan answered the second question in the negative in a decision and order of July 29, 2002 in Fogarty v. Jones Express, Inc., CV-01-077 from this court. I have reviewed both the Superior Court decision in Gerard v.

<u>Decoster</u>, Androscoggin CV-01-134 of January 17, 2003 and the decision of Judge Cohen in <u>Rathje v. Scotia Prince Cruises, Ltd</u>, Civil 01-123-P-DMC, of the United States District Court in Portland, Maine of December 20, 2001. I find Judge Cohen's succinct conclusion at the end of Section III of his memorandum discussion to be persuasive. He stated, "The Maine legislature having expressed no clear interest to apply the statute in issue (26 M.R.S.A. §626) extraterritorially, it is inapplicable in this case." Likewise, there is no clearly expressed intention to apply the overtime statute at §664 extraterritorially. <u>See</u> <u>Equal Employment Opportunity Commission v. Arabian American Oil Co.</u>, 499 US 244, 248 (1991). It is not a question of whether Maine could constitutionally have an overtime law with an extraterritorial effect but whether it clearly intended to. There is no indication that it did.

The entry is:

Defendants' motion for summary judgment is granted. Judgment for the defendants.


DATED:     July 17, 2003


_____
Paul A. Fritzsche,
Superior Court Justice

Donald F. Fontaine, Esq.,
Jeffrey A. Thaler, Esq. and
Susan P. Strommer, Esq. (Visiting Atty.) - PLS
Philip Moss, Esq. - DEFS